STATE OF MAINE
Washington, ss

SUPERIOR COURT
Docket No.: MACSC-CV-26-18

Renee Gray               )
                                  )

v.                         )

                                  )     COMPLAINT AND REQUEST FOR

County of Washington, Commissioner   )     PRELIMINARY INJUNCTION
David Burns and Commissioner William  )
Howard, both in their individual and    )
official capacities                  )

NOW COMES the Plaintiff, Renee Gray, who complains against the Defendants as follows:

## FACTS AND BACKGROUND

1. Plaintiff, Renee Gray is an individual residing in Addison, Washington County, Maine, who is currently the County Manager of Washington County, Maine, pursuant to a contract entered into between her and the County of Washington on July 13, 2023. (See Attached Exhibit A.)

2. Defendants are the County of Washington, Commissioner David Burns an individual residing in Washington County, Maine, in both his individual and official capacities and Commissioner William Howard, an individual residing in Washington County, Maine, in both his individual and official capacities.

3. On June 24, 2026 Commissioner Burns asked Washington County Administrative Assistant Carla Manchester to schedule a Special Commissioner's meeting for an executive session to discuss personnel matters with a possible vote afterwards for July 2, 2026.

4. Plaintiff Gray was not advised that this special meeting concerned her employment and at no time prior to the meeting was she given notice that the Commissioners had been or would be discussing her termination. Upon information and belief from his public comments to the Machias Valley News Commissioner Courtney Hammond also had no idea why the meeting



had been called or what was to be discussed in the executive session.

5.  At the July 2, 2026 Special Commissioner's meeting the only persons who attended were the three Washington County Commissioners, Ms. Gray and three members of the public, one of which was attorney Dennis Mahar.  Upon information and belief from his public comments to the Machias Valley News Commissioner Hammond had no idea why attorney Dennis Mahar was attending the meeting.

6.  At no time prior to the July 2, 2026 meeting did the Commissioners vote on the public record to retain Attorney Mahar, nor was there ever a vote to expend public funds on retaining counsel for this meeting.  Without such a vote, Attorney Mahar could not have legally served as counsel for the County of Washington.

7.  Since there is no public record of a vote to retain or consult with Attorney Mahar, it is clear that one or more of the Commissioners spoke to him about Ms. Gray's employment status and contract prior to July 2, 2026 in violation of public meetings laws.

8.  There is no publically available record of the discussion held between either Commissioner Burns and Attorney Mahar and/or Commissioner Howard and Attorney Mahar outside of the confines of a public meeting as required by law; however, Plaintiff Gray asserts that these two Commissioners regularly use their personal cell phones and/or personal email for conducting Washington County business, thus she believes that records do exist which can verify this meeting and/or meetings.  Additionally, Commissioner Burns has admitted in text messages to meeting with Attorney Mahar prior to the July 2, 2026 public meeting to discuss his plan to terminate Plaintiff Gray.

9.  The non-public meeting and/or meetings with Attorney Mahar prior to the date of the public meeting on July 2, 2026 were designed to conceal the events that Commissioners Burns and

Howard had orchestrated to terminate Ms. Gray.

10.   At the July 2, 2026 public meeting Commissioner Burns immediately moved for an executive session to discuss a personnel matter, which was seconded by Commissioner Howard. All persons were then asked to leave the room with the exception of the three Commissioners and Attorney Mahar. At that point in time, Plaintiff Gray was not advised that she was the subject of the executive session, nor was she afforded the opportunity to attend the executive session or request that the matter be held publically.

11.   During this executive session, Attorney Mahar was given access to Ms. Gray's private employee files, which he knew or should have known was done in violation of the law as there had been no public vote to consult or retain him as counsel for Washington County for this matter. Since the County Commissioners intended to discuss Ms. Gray's employment status, Title 13, Section 405 was violated, which requires that any person charged or investigated must be permitted to be present at an executive session if that person so desires and that any person charged or investigated may request in writing that the investigation or hearing of charges or complaints against that person be conducted in open session.

12.   After the Commissioners had conducted unlawful discussions with Attorney Mahar about Ms. Gray's employment, Attorney Mahar went to her office and invited her to join the meeting. In this second portion of the executive session she was asked to resign, but given no lawful reason for the request.

13.   Plaintiff Gray demanded to know the cause for the request for her to resign and demanded to know why she had never received a performance review before being asked to resign.

14.   Washington County has never complied with this provision of the employment contract and no performance evaluations exists in her personnel file. Her personnel file has no negative

performance evaluation, negative records of complaints or any other indication that there is cause for her termination.

15. In the executive session, no Commissioner gave Plaintiff Gray any reason which would amount to a legal cause for her termination. Since that date, the County of Washington through it Commissioners have continued to refuse to provide any legal cause for her termination.

16. After the executive session, the meeting reconvened in public session where Commissioner Burns and Commissioner Howard voted to terminate Ms. Gray's employment and she was provided with a one sentence Termination Letter, which also did not state any legal cause for her termination, and which provided for her termination after a 20 day period, on July 22, 2026. (See Exhibit B.) Nothing in Ms. Gray's employment contract states that existing state and federal laws do not apply to her employment. She is willing and able to perform the duties of County Manager.

17. As County Manager, Plaintiff Gray has certain Legislatively enacted protection from being terminated without cause, notice and opportunity for public hearing. These rights are guaranteed pursuant to Title 30-A, section 82 which states that "The county commissioners may, **for cause**, remove or suspend the county administrator in accordance with the procedure for removing or suspending a town manager under section 2633." (Emphasis added.)

18. Plaintiff Gray asserts that these Legislatively enacted rights expressing the requirement of need for cause, notice and public hearing cannot be waived by contract, thus the 20 day provision cited by Commissioners Burns and Howard are null and void ab initio.

19. Plaintiff Gray asserts that the procedure for termination which is expressed in Title 30-A,

section 2633 specifically requires that the Commissioners first prepare and file a preliminary resolution with the County Clerk "stating the specific reasons for the proposed removal," thus explaining the legal cause for termination. That law requires that the notice must also be served upon Ms. Gray within 10 days of its filing. Plaintiff Gray asserts that no such notice was ever filed, not was she ever served with such notice.

20. Plaintiff Gray asserts that after the required notice is served, Title 30-A, section 2633 gives her 20 days to request a public hearing. Plaintiff Gray asserts that she has never received any opportunity to request a public hearing from the County of Washington.

21. Plaintiff Gray asserts that Commissioners Burns and Howard conspired with Attorney Mahar to thwart the legal requirements of written cause, adequate notice and opportunity for public hearing because she was aware of certain acts of Commissioners Burn and Howard which amount to potential civil and criminal acts that they did not wish for the public to know, which could be discussed in a public termination hearing.

22. Plaintiff Gray asserts that because she was not provided with legally required written cause, notice and opportunity for public hearing and because Commissioners Burns and Howard conspired to deprive her of these fundamental rights, the pending termination letter is contrary to law and illegal.

23. Plaintiff Gray asserts that Commissioners Burns and Howard have violated public hearing and records laws on numerous occasions, committed financial mismanagement of the County of Washington and directed sexually discriminatory and derogatory language towards her and other females in county government.

24. On numerous occasions, Commissioner Howard has called her and other females in county government a "girl' in a derogatory manner during public meetings on the record.

Commissioner Howard told her "not put away her waitressing skills" on April 30, 2025. Commissioner Burn threatened her on May 28, 2026, while pointing his finger at her that she would do what he told her to do or that he would find someone else who would when she questioned whether she had authority to follow his directives. This incident pertained to her direction from Commissioners Burns and Howard to prepare a plan for what would have to occur if the County of Washington ran out of funds to pay employees, which was possible at the time due to Commissioner Burns mismanagement of securing the yearly TAN for Washington County, which he did not wish to be revealed to the general public.

25. Plaintiff Gray asserts that the threat from Commissioner Burns to replace her was made to intimidate, harass and silence her, and that the conspiracy by Commissioners Burns and Howard to deny her right to a public hearing by violating state law in the termination process verifies that Commissioner Burns carried through on his threat.

26. Plaintiff Gray has for the past 16 months been cooperating with the Maine Attorney General's Office in their investigation of the mismanagement of Washington County funds. She is aware of several acts which may constitute criminal violations of the law committed by Washington County through the acts of its Commissioners or others, including the transfer of funds from the Unorganized Territory account to the General Account in order to meeting cash flow deficits, which is defined as a crime under Maine law.

27. Plaintiff Gray asserts that the County of Washington is attempting to silence her because of her ongoing cooperation with the Attorney General's Office. She asserts that she should be afforded  whistle-blower status and asserts that the issuance of her termination notice is retaliatory, not for cause and illegal.

28. Plaintiff Gray through counsel gave notice to the County of Washington and to

Commissioners Burns and Howard personally on the record during a public meeting on July 9, 2026 of her intent to pursue legal action including seeking a restraining order and damages if the Notice of Termination was not rescinded.

30. When Commissioners Burns and Howard were question during the public comment section of that public meeting as to the cause for termination, they refused to state any cause, however, Commissioner Burns did state on the public record that there was a good reason for the termination, implying wrongdoing by the Plaintiff. This statement was defamatory and intended to cause damage to the reputation of the Plaintiff.

31. In response to the notice of Plaintiff Gray's intention to pursue legal action including seeking a restraining order and damages if the Notice of Termination was not rescinded, Commissioners Burns and Howard immediately voted on the public record to forbid Plaintiff Gray from returning to her office for any purpose except for one time to gather her personal belongings, thus it is clear they have no intention of following the law and giving her the legally required written cause, notice and opportunity for public hearing.

32. Plaintiff Gray asserts that to date no cause has been given for the pending termination, proper notice has not been given and the opportunity for conducting a hearing have been denied, thus her pending termination is not legal.

33. Plaintiff asserts that the actions of the Defendant were performed with malice and to silence her to conceal their own wrongdoing, and have resulted in damage to the Plaintiff.

34. Plaintiff Gray asserts that she has suffered reputation damage and severe emotional distress due to the illegal and intentional actions of Commissioner Burns and Commissioner Howard.

35. Plaintiff Gray asserts that her rights under Maine law have been violated and that she is entitled to maintain her employment without further sexual harassment, intimidation and

degrading comments from Commissioners Burns and Howard. As such, she is entitled to a preliminary and permanent injunction prohibiting the County of Washington from proceeding with the intended illegal termination until further order from this Court.

## CAUSES OF ACTION

Count 1:      First Statutory Claim

Plaintiff asserts that Commissioner Burns and Commissioner Howard acted illegally in violation of the public meetings law as set forth herein above and as stated in M.R.S.A. Title 1, Section 401-414. They did so in order to thwart the Legislative purpose of the public meeting laws and to conspire to violate the Plaintiff's state and federal due process rights.

Count 2:      Second Statutory Claim

Plaintiff asserts that Commissioner Burns and/or Commissioner Howard acted without authority when they contacted Attorney Mahar to act on behalf of the County of Washington without a vote on the public record as set forth herein above in violation of M.R.S.A. Title 30-A, Section 102. This violation of the law was compounded when they discussed the Plaintiff's employment and potential termination with Attorney Mahar outside of an executive session, violating the confidentiality of the Plaintiff's employment files.

Count 3:      Third Statutory Claim

Plaintiff asserts that the County of Washington, through the actions of Commissioner Burns and Commissioner Howard violated M.R.S.A. Title 30-A, Sections 82 to intentionally deprive the Plaintiff of her right to be terminated from employment only for cause.

Count 4:      Fourth Statutory Claim

Plaintiff asserts that the County of Washington, through the actions of Commissioner Burns and Commissioner Howard violated M.R.S.A. Title 30-A, Sections 2633 to intentionally deprive the

Plaintiff of her right to receive written preliminary resolution stating the reasons for her removal, to allow a reply in writing thereafter within 20 days affording her the option of requesting a public hearing and to grant her a public hearing as required.

Count 5:        Breach of Contract

Plaintiff asserts that the County of Washington has breached its contract with her as set forth herein above by not complying with Section 3 which states that the County of Washington will conduct annual evaluations of her performance, thus depriving her of the right to present such annual reviews at any public hearing pertaining to her potential termination and/or to use such reviews when challenging any purported cause for termination.

Count 6:        Breach of Contract

Plaintiff asserts that the County of Washington has breached its contract with her as set forth herein above by terminating her without cause.

Count 7:        Whistleblower Violation

Plaintiff asserts that the Defendants have violated her right to be free from threats of adverse employment action and actual adverse employment action as set forth herein above pursuant to M.R.S.A. Title 26, Sections 831-840, known as the "Whistleblowers' Protection Act."

Count 8:        Sexual Harassment and Discrimination

Plaintiff asserts that the facts set forth above pertaining to the comments of Commissioner Burns and Commissioner Howard violated the Maine Human Rights Act, Title 5, Section 4551, et seq which prohibits such conduct and provides for civil remedies.

Count 9:        Intentional and/or Negligent Infliction of Emotional Distress

Plaintiff asserts that the actions of the Defendants as set forth herein above constitute intentional and/or negligent infliction of emotional distress.

Count 10:    Defamation

Plaintiff asserts that the public comment made by Commissioner Burns during the public hearing on July 10, 2026 when he refused to state any good cause for her termination and implied wrongdoing on her part constitute defamation and were intended to cause harm to the reputation of the Plaintiff.

Count 11:    State Procedural and Substantive Due Process Violation

Plaintiff asserts that the actions of the Defendants as set forth herein above constitute a violation of her Due Process Rights under the Maine Constitution, Article I, Section 6-A

Count 12:    Federal Procedural and Substantive Due Process Violation

Plaintiff asserts that the actions of the Defendants as set forth herein above constitute a violation of her Due Process Rights under the United State Constitution, Fourteenth Amendment, Section 1.

Count 13:    Injunctive Relief

Plaintiff asserts that she is entitled to a Preliminary and Permanent Injunction pursuant to Maine Rules of Civil Procedure, Rule 65.

## DAMAGES

Plaintiff Gray asserts that she is entitled to the following damages and relief:

1.    A preliminary and permanent injunction prohibiting the Defendant from terminating her employment.

2.    Any and all lost future wages which result from the actions of the Defendants.

3.    Reasonable damages for the emotional distress caused by the actions of the Defendant.

4.    Reasonable damages for the defamation of the Plaintiff.

5.    Attorney's fees and costs as allowable by statute or law.

WHEREFORE, the Plaintiff requests that this Court award damages as are just and reasonable, including costs and attorney's fees, issue a preliminary injunction and thereafter a permanent injunction enjoining the Defendant from further adverse employment actions, and for any and all other relief which the Court deems appropriate.

Dated this 13th day of July, 2026.

Attorney for Plaintiff, Renee Gray

Jeffrey W. Davidson, Bar No. 9579
Davidson Law Office, L.L.C.
86 Court Street
Machias, Maine 04654
(207) 259-3411

## VERIFICATION

I hereby swear that the above facts are true to the best of my knowledge, information and belief, and insofar as it is based upon information, I believe the information to be true.

Dated    7/13/26

Renee Gray

Personally appeared the above named Renee Gray and signed and made oath to the truth of the statements in the above affidavit, before me,

Dated    7/13/26

Jeffrey W. Davidson, Bar No. 9579



PLAINTIFF'S
EXHIBIT
NO. A

## COUNTY MANAGER EMPLOYMENT AGREEMENT

THIS AGREEMENT is made and entered into this 13th day of July, 2023 between the COUNTY of Washington, Maine (hereinafter called COUNTY) and Renée Davis Gray (hereinafter called EMPLOYEE) pursuant to these terms and conditions:

A.  WHEREAS, the COUNTY wishes to employ the services of Renée Gray as DEPUTY COUNTY MANAGER of the COUNTY of Washington; and

B.  WHEREAS, the COUNTY and EMPLOYEE desire to provide for certain procedures, benefits and requirements regarding employment of EMPLOYEE by the COUNTY; and

C.  WHEREAS, EMPLOYEE wishes to accept employment as DEPUTY COUNTY MANAGER of said COUNTY under the terms and conditions stated herein.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, intending to be legally bond hereby, the COUNTY and EMPLOYEE agree to the following;

1.  DUTIES – COUNTY agrees to employ Renée Gray as the DEPUTY COUNTY MANAGER of the COUNTY of Washington to perform all duties as specified by law, and to perform such other proper duties as assigned by the COUNTY COMMISSIONERS until December 31, 2023 at which time the DEPUTY COUNTY MANAGER will assume the duties of the COUNTY MANAGER effective January 1, 2024.

2.  COMPENSATION – COUNTY agrees to pay EMPLOYEE a starting salary of eighty-one thousand, eight hundred ($81,800) payable in such installments as the COUNTY may from time to time determine for all management employees. EMPLOYEE'S salary shall be subject to adjustment as the COUNTY COMMISSIONERS shall determine based upon an initial six-month performance followed by annual performance evaluations of EMPLOYEE. The EMPLOYEE shall be included in all wage increases as determined by the COUNTY COMMISSIONERS.

3.  TERMS OF EMPLOYMENT
    (a) The first six (6) months of employment shall serve as a probationary period. The EMPLOYEE or COUNTY may decide to terminate the Employment Agreement at their discretion, subject to the conditions contained herein.
    (b) EMPLOYEE'S term of agreement shall be indefinite, subject to the conditions contained herein.
    (c) The COUNTY COMMISSIONERS will on an annual basis conduct an evaluation of the EMPLOYEE'S performance. This evaluation will help define goals and performance objectives for the proper operation of the COUNTY government, and help to set in place objectives for the future.



(d) Nothing in this Agreement shall prevent, limit or otherwise interfere with the right of the COUNTY COMMISSIONERS to terminate the services of EMPLOYEE at any time, subject only to the provision set forth in Section 4, paragraph (a) of the Agreement.  The COUNTY COMMISSIONERS shall provide a twenty (20) day written notice of termination.

(e) Nothing in this Agreement shall prevent, limit, or otherwise interfere with the right of the EMPLOYEE to resign at any time from her position with the COUNTY, subject only to the provision set forth in Section 4, paragraph (b) of this Agreement.

4. TERMINATION CONDITIONS AND PAY

(a) In the event EMPLOYEE is terminated by the COUNTY COMMISSIONERS while EMPLOYEE is willing and able to perform the duties of COUNTY MANAGER,  COUNTY shall continue to pay EMPLOYEE'S salary and benefits for a period of sixty (60) days following the specified date of termination, subject to the following conditions:

    (1) IF EMPLOYEE shall obtain employment elsewhere prior to the expiration of said sixty (60) day period, the salary and benefits payable to EMPLOYEE shall cease as of the date of such other employment;

    (2) In the event EMPLOYEE is terminated because of her conviction of any felony, then in that event, the COUNTY shall have no obligation to pay the stipulated termination salary and benefits.

(b) EMPLOYEE may voluntarily resign her position at any time upon thirty (30) days written notice to COUNTY.  In the event of such termination, EMPLOYEE shall not be entitled to receive the termination pay provided for in paragraph (a) of this section.

5. RETIREMENT PLAN – EMPLOYEE and COUNTY will make contributions at the rates prescribed by the Retirement System and the COUNTY personnel policy, rules and guidelines.

6. AUTOMOBILE ALLOWANCE – EMPLOYEE will provide her own transportation for use on COUNTY business and COUNTY agrees to pay EMPLOYEE reimbursement for automobile use at the rate paid to all COUNTY employees for business travel.

7. INSURANCE COVERAGE

(a) COUNTY shall provide health insurance for the employee and any family members at the same rate as prescribed in county policy.

(b) COUNTY shall provide EMPLOYEE with life insurance in the amount of one time the EMPLOYEE'S annual salary.

(c) COUNTY shall defend, hold harmless and indemnify EMPLOYEE against any tort, professional liability claims or demand or other legal action, whether groundless or otherwise, arising out of any alleged act or omission occurring in the performance of EMPLOYEE'S duties as COUNTY MANAGER. COUNTY will defend, compromise or settle as appropriate any such claim or suit and pay the amount of any settlement or judgement. This section does not apply to any claims arising outside of EMPLOYEE'S duties as COUNTY MANAGER.

8. <u>VACATION AND SICK LEAVE</u>

(a) EMPLOYEE shall earn and accumulate up to four (4) weeks' vacation time each calendar year at the rate prescribed by the existing personnel policy manual.

(b) EMPLOYEE shall earn and accumulate sick leave at the rate prescribed by the existing personnel policy manual.

(c) Upon termination, whether voluntary or involuntary, COUNTY shall compensate EMPLOYEE for all accrued vacation leave as outlined in the personnel policy manual. Said compensation shall be based upon EMPLOYEE'S salary as of the date of employment termination.

9. <u>RESIDENCY</u> – EMPLOYEE shall maintain residence in the COUNTY OF WASHINGTON which shall be her permanent and primary residence. EMPLOYEE shall not reside outside the COUNTY OF WASHINGTON without authorization of the COUNTY COMMISSIONERS.

10. <u>BUSINESS EXPENSES</u> – COUNTY shall reimburse EMPLOYEE for all business-related expenses.

11. <u>CONFERENCE TRAINING AND EDUCATION</u>

(a) The COUNTY shall pay for membership dues and attendance at the Maine Town and City Managers Annual Meeting, and the Maine County Associations. Reimbursement for any dues, attendance at meetings, and expenses for other professional development activities of the EMPLOYEE are subject to COUNTY COMMISSIONERS' approval.

12. GENERAL BENEFITS – In addition to the benefits cited herein, COUNTY shall provide EMPLOYEE with any and all benefits that apply to other administrative employees.

13. GENERAL PROVISIONS

(a) This Agreement shall become effective as of the date of its execution.

(b) If any provision, or portion thereof, contained in this Agreement is held to be unconstitutional, invalid, or unenforceable, the remainder of this Agreement shall not be affected and shall remain in full force and effect.

(c) No term or provision of this Agreement shall be deemed to have been waived by either party unless such waiver is in writing and signed by the party making the waiver.

(d) This Agreement may be amended at any time only by a writing duly executed by both parties.

(e) The subject headings of the Sections of this Agreement are included for the purpose of convenience only and shall in no way affect the meaning, construction or interpretation of any provision of this Agreement.

IN WITNESS WHEREOF, and intending to be legally bond, the parties have, in good faith, executed this Agreement the day and year above written.

DATE: _____7/24/2023_____

COUNTY OF WASHINGTON

BY: _____

Christopher M. Gardner, Chairman

_____

Vinton E. Cassidy, Commissioner

_____

John B. Crowley, Sr., Commissioner

_____

Renée D. Gray

WITNESS: _____

PLAINTIFF'S EXHIBIT

NO. B

PENGAD 800-631-6989

## Termination Notice

July 2, 2026


To:     Renee Gray

From:   Washington County Commissioners


Consistent with your original "Employment Agreement" with the Washington County Commissioners dated July 24, 2023, this is written notice that your employment as County Manager will be terminated on July 22, 2026.

David C Burns, Commission Chair


Courtney Hammond, Commissioner

Billy Howard, Commissioner